UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

THE BRITH SHOLOM FOUNDATION, LUCINDA McBURNETTE, and ABDUS SABUR,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
Defendant.

Civil Action No. 10-423

**ANSWER TO COMPLAINT AND EMERGENCY PETITION TO PREVENT FORECLOSURE SCHEDULED FOR FEBRUARY 4, 2010**

Defendant, United States Department of Housing and Urban Development ("HUD"), by and through its undersigned attorneys, answers the Complaint as follows.

**INTRODUCTION**

The Introduction is a self-serving characterization of the Complaint to which no response is required. The first sentence of the introduction is admitted. To the extent a further response is required, any factual allegations in the Introduction are denied.

By way of further response, in all of its dealings with The Brith Sholom Foundation, HUD has fought to ensure that the elderly residents of The Brith Sholom House live in safe, comfortable, and secure surroundings. The Foundation is in arrears on the two mortgage loans it has with HUD. One loan has been in arrears since 2004, the other since 2007. HUD is – and has been – concerned that the Foundation, which owns and operates The Brith Sholom House, has not shown that it is capable of fulfilling its obligations to these elderly residents. The facts laid out in the Complaint, even as one-sided as they are, bear out that concern. Several HUD inspections reveal that the Foundation has had trouble meeting minimum standards for the living

facilities at The Brith Sholom House. In fact, these inspections found that facilities were plagued by serious physical deficiencies calling for immediate attention. In light of the financial arrearages and the repeated failure to meet HUD standards, HUD has instituted foreclosure proceedings. The Foundation has been unable to show that it can repair The Brith Sholom House, let alone to maintain it.

HUD must ensure that whoever owns The Brith Sholom House has the wherewithal to operate it so that its elderly residents can live in the homes they deserve. HUD has worked with the current owners of The Brith Sholom House, will work with any future owners of The Brith Sholom House, and will continue to work with the residents of The Brith Sholom House to make sure that this happens. In fact, any new owner of The Brith Sholom House will be required – by statute, regulation, and contract – to maintain the facility as safe, affordable rental housing for seniors.

HUD program participants must play by the rules. HUD has given the Foundation numerous opportunities to cure its past and ongoing problems. Those problems remain. HUD therefore must move forward. It has the a responsibility to The Brith Sholom House residents and to the taxpayers – who are owed a great deal of money here – to do just that.

**PARTIES**

1. Admitted upon information and belief.

2. Admitted.

3-4. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraphs 3-4. The allegations are therefore denied.

5. Admitted.

6. Admitted.

**JURISDICTION**

7. It is admitted only that this Court has jurisdiction over this matter. It is not admitted that tenant plaintiffs have standing.

**VENUE**

8. It is admitted only that this Court has venue over this matter.

**BACKGROUND**

9-14. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraphs 9-14. The allegations are therefore denied. By way of further response, paragraphs 9-14 refer to documents, which speak for themselves.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Denied. By way of further response, HUD has conducted inspections of The Brith Sholom House, which includes the portion generally referred to as the "House" and the portion generally referred to as the "Addition." Hereinafter, when HUD refers to "The Brith Sholom House," it is referring to both the "House" and the "Addition." Several such inspections have revealed that the Foundation did not meet minimum standards, set by HUD, for physical facilities at The Brith Sholom House. Such standards address, among other things, the safety of the

facilities. There are no claims that the Foundation illegally discriminates, that is not an issue.

20. Admitted upon information belief. By way of further response, The Brith Sholom House is well below full occupancy.

21. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21. The allegations are therefore denied.

22. Denied. By way of further response, HUD has conducted inspections of The Brith Sholom House. Several such inspections have revealed that the Foundation did not meet minimum standards, set by HUD, for physical facilities at The Brith Sholom House. Such standards address, among other things, the safety of the facilities. There are no claims that the Foundation illegally discriminates, that is not an issue.

23. Admitted in part; denied in part. It is admitted that the Foundation provides residents of The Brith Sholom House with services. It is denied that the Foundation is the only entity that can provide such services. Except as expressly admitted herein, the remaining allegations contained in paragraph 23 are denied.

24. Admitted.

25. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 25. The allegations are therefore denied.

26. Paragraph 26 refers to a document which speaks for itself.

27. Denied as stated. By way of further response, the Foundation implies by its allegations that, should a new entity purchase The Brith Sholom House in a foreclosure sale, the

rent charged to residents of the facility will automatically rise. A rental increase is by no means certain. What is more, should the Foundation itself maintain ownership in The Brith Sholom House, it may raise rents, especially if it must find a way to pay for necessary repairs to the facility and to bring its two mortgages current. Regardless of who owns The Brith Sholom House, statutory, regulatory, and contractual provisions will require that the facility provides affordable rental housing for senior citizens and will restrict whether and how much any owner can raise existing rents. The paragraphs also refer to a document, which speak for themselves.

28. Denied. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 25. The allegations are therefore denied. By way of further response, whether or not the Foundation owns The Brith Sholom House, it may still subsidize the rent of the residents if it so chooses.

29. Admitted. By way of further response, there is nothing to prevent an individual eligible for Section 8 assistance to live at The Brith Sholom House now or in the future.

30. Denied as stated. By way of further response, there is nothing to prevent an individual eligible for Section 8 assistance to live at The Brith Sholom House now or in the future. The facility must, however, meet the physical standards of the local public housing authority in order to accept vouchers. What is more, if The Brith Sholom House were to close, current residents could be eligible for certain Section 8 benefits.

31. Denied as stated. By way of further response, the Foundation implies by its allegations that, should a new entity purchase The Brith Sholom House in a foreclosure sale, numerous residents will be evicted. The Foundation fails to note the elaborate statutory,

regulatory, and contractual scheme that currently governs The Brith Sholom House and will continue to govern the property regardless whether it is sold in a foreclosure sale. Simply stated, the property will remain an affordable rental housing option for elderly residents for many years to come. Any new owner will be required, by deed restriction, to maintain the facility as affordable rental housing for the elderly for 20 years. The paragraph also refers to documents, which speak for themselves.

32. Denied. By way of further response, HUD has conducted inspections of The Brith Sholom House. Several such inspections have revealed that the Foundation did not meet minimum standards, set by HUD, for physical facilities at The Brith Sholom House. Such standards address, among other things, the safety of the facilities.

**FACTS GIVING RISE TO THE PENDING FORECLOSURE**

***Inspections by HUD's Real Estate Assessment Center (REAC)***

33-34. Admitted.

35. Denied as stated. By way of further response, once an entity is already in default, a special inspection resulting in a score below 60 – such as occurred here – will not be referred to the HUD Departmental Enforcement Center.

36-38. Denied as stated. By way of further response, the Complaint refers to the procedure for regular, periodic inspections done by the Real Estate Assessment Center. It does not describe the procedure for special inspections conducted of facilities as a part of the one-time right to cure, such as the inspections carried out here. The special inspection here was part of a one-time right to cure under the Multifamily Mortgage Foreclosure Act.

**Notice of Default**

39. Admitted.

40. Denied. HUD provided written notice to the residents of The Brith Sholom House that it was in the process of instituting foreclosure proceedings. It did so in 2008. In response to that notice, residents corresponded with HUD about their concerns with such proceedings. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations that neither of the individual plaintiffs received such notice. The allegations are therefore denied.

41-42. Denied as stated. Paragraphs 41-42 refer to documents, which speak for themselves. By way of further response, HUD notified the Foundation that it failed two inspections. The inspections, in 2006 and 2007, identified serious physical deficiencies in The Brith Sholom House. In 2006, The Brith Sholom House received a score of 48c*. The maximum possible numerical score is a 100. The "c" means that there are life threatening health and safety deficiencies calling for immediate attention or remedy. The "*" means that there are smoke detector deficiencies on the property. In 2007, The Brith Sholom House received a score of 53c, which indicates that there were still life threatening health and safety deficiencies calling for immediate attention or remedy.

43. Admitted. By way of further response, by admitting that the Foundation certified that it had completed necessary repairs, HUD does not admit that the repairs were, in fact, completed. It appears that the Foundation did not make this certification until January 2009, suggesting that it took the Foundation one-and-a-half years to provide the certification.

44. Denied as stated. Paragraph 44 refers to a document, which speaks for itself. By

way of further response, the Foundation was – and still is – in significant financial default. It has been in arrears on its two mortgages with HUD for several years. The arrearages on one mortgage date to 2004; the arrearages on the other date to 2007. What is more, the document to which the Complaint cites notes that the Foundation was provided with a "hearing."

45. Denied. HUD provided written notice to the residents of The Brith Sholom House that it was in the process of instituting foreclosure proceedings. It did so in 2008. In response to that notice, residents corresponded with HUD about their concerns with such proceedings. After reasonable investigation, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations that neither of the individual plaintiffs received such notice. The allegations are therefore denied.

46. Denied.

47. Denied. By way of further response, a special inspection as part of a one-time right to cure was scheduled for March 17, 2009. Such inspections differ from regular, periodic REAC inspections.

48-55. Denied. By way of further response, the March 17, 2009, inspection was a special inspection, not a regular, periodic REAC inspection. The Foundation certified that the entire facility was in compliance and ready for inspection. HUD was aware that the Foundation claimed that portions of The Brith Sholom House were under renovation. That claim would not, in and of itself, remove those portions of the facility from inspection. HUD does not remove portions of a facility from an inspection simply because an owner does not want HUD to see those portions. And, in special inspections, units under renovation are to be inspected. HUD recognizes that, under certain circumstances present in regular, periodic inspections, renovated

sections of a facility may not be inspected. Such circumstances did not exist here. At all events, the Foundation does not appear to distinguish between units undergoing renovation and units merely vacant.

56. Denied. The allegations contained in paragraph 56 are speculative.

57. Admitted in part; denied in part. HUD conducted a special inspection of The Brith Sholom House on March 17, 2009, as part of a one-time right to cure. That inspection, like several inspections before it, revealed significant physical deficiencies in the facility. By way of further response, the paragraph refers to a document, which speaks for itself. Except as expressly admitted herein, the remaining allegations contained in paragraph 57 are denied.

58. Denied. Paragraph 58 states conclusions of law to which no response is required. To the extent a response is required, the allegations contained in the paragraphs are denied. By way of further response, the special inspection protocol is to inspect at least 60% of the unites.

59-61. Denied. By way of further response, the Foundation certified that the entire facility was in compliance and ready for inspection. HUD was aware that the Foundation claimed that portions of The Brith Sholom House were under renovation. That claim would not, in and of itself, remove those portions of the facility from inspection. HUD does not remove portions of a facility from an inspection simply because an owner does not want HUD to see those portions. Moreover, in special inspections, units under renovation are to be inspected. HUD recognizes that, under certain circumstances present in regular, periodic inspections, renovated sections of a facility may not be inspected. Such circumstances did not exist here. At all events, the Foundation does not appear to distinguish between units undergoing renovation and units merely vacant.

62-63. Denied.

64. Admitted upon information and belief.

65. Denied as stated. By way of further response, the inspection score was 42c*. As noted above, the maximum possible numerical score is a 100. The "c" means that there are life threatening health and safety deficiencies calling for immediate attention or remedy. The "*" means that there are smoke detector deficiencies on the property.

66-67. Denied. By way of further response, once an entity is already in default, a special inspection resulting in a score below 60 – such as occurred here – will not be referred to the HUD Departmental Enforcement Center. The inspection here was part of a one-time right-to-cure, and not a regular, periodic REAC inspection.

68. Denied. At all relevant times of the Complaint, The Brith Sholom House was in default. Therefore, at all relevant times, the Atlanta Multifamily Property Disposition Center has, pursuant to normal HUD practice, been involved in addressing the issues leading to the foreclosure of The Brith Sholom House.

69. Denied as stated. By way of further response, HUD has conducted inspections of The Brith Sholom House. Several such inspections have revealed that the Foundation did not meet minimum standards, set by HUD, for physical facilities at such facilities. Such standards address, among other things, the safety of the facilities. What is more, the Foundation was – and still is – in significant financial default. It has been in arrears on its two mortgages with HUD for several years. The arrearages on one mortgage date to 2004; the arrearages on the other date to 2007. These primary reasons, among others, underly the foreclosure proceedings. The paragraph also refers to a document, which speaks for itself.

70. Denied. HUD provided written notice to the residents of The Brith Sholom House that it was in the process of instituting foreclosure proceedings. It did so in 2008. In response to that notice, residents corresponded with HUD about their concerns with such proceedings. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations that neither of the individual plaintiffs received such notice. The allegations are therefore denied.

71. Denied.

72. Denied as stated. The paragraph refers to several documents, which speak for themselves.

73. Denied. By way of further response, HUD recognizes that counsel for the Foundation claimed to appeal the March 17, 2009, special inspection. The inspection was not, however, a regular, periodic REAC inspection and the appeal rights for such inspections do not apply to the special inspection here.

74. Denied. The results of the inspection were released on March 31, 2009.

75. Denied as stated. The paragraph refers to a document, which speaks for itself.

76. Denied. By way of further response, the March 17, 2009, inspection was not a REAC inspection; so, the Foundation was not entitled to the appeal rights it describes. What is more, the Foundation did otherwise have the opportunity to present legal reasons why foreclosure should not proceed and did present such reasons.

77. Denied. Paragraph 77 states conclusions of law to which no response is required. To the extent a response is required, the allegations contained in the paragraphs are denied.

78. Denied as stated. The paragraph refers to a document, which speaks for itself.

79. Denied. By way of further response, document to which the paragraph cites describes the process afforded to the Foundation to explain why foreclosure should not proceed. The Foundation had the opportunity to be heard, used that opportunity to press its points, and used that opportunity to present supporting documentation.

80. Admitted.

81. Denied as stated. HUD provided written notice to the residents of The Brith Sholom House that it was in the process of instituting foreclosure proceedings. It did so in 2008. In response to that notice, residents corresponded with HUD about their concerns with such proceedings. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations that neither of the individual plaintiffs received such notice. The allegations are therefore denied.

82. Admitted. By way of further response, the January 12, 2010, inspection examined only a portion of The Brith Sholom House, the "Addition." The inspection did not necessarily find, nor should it be assumed, that the overall physical condition of The Brith Sholom House currently meets minimum HUD standards. No inspection has found that the Foundation corrected the serious physical deficiencies that were identified in the 2006 and 2007 inspections. Moreover, the Foundation was – and still is – in significant financial default. It has been in arrears on its two mortgages with HUD for several years. The arrearages on one mortgage date to 2004; the arrearages on the other date to 2007.

83. Admitted.

84. Denied. By way of further response, the January 12, 2010, inspection examined only a portion of The Brith Sholom House, the "Addition." The inspection did not necessarily find, nor should it be assumed, that the overall physical condition of The Brith Sholom House currently meets minimum HUD standards. No inspection has found that the Foundation corrected the serious physical deficiencies that were identified in the 2006 and 2007 inspections. Moreover, the Foundation was – and still is – in significant financial default. It has been in arrears on its two mortgages with HUD for several years. The arrearages on one mortgage date to 2004; the arrearages on the other date to 2007.

85. Denied. After reasonable investigation during the time period available to respond, HUD does not have knowledge or information sufficient to form a belief about the truth of the allegations that the Foundation can cure its financial default. The allegations are therefore denied. By way of further response, the Foundation was – and still is – in significant financial default. It has been in arrears on its two mortgages with HUD for several years. The arrearages on one mortgage date to 2004; the arrearages on the other date to 2007. That the Foundation has a self-serving affidavit and some letters from a potential partner stating a hope to invest in The Brith Sholom House does not, in and of themselves, demonstrate that the partner is, in fact, financially able to bring the mortgages up to date, complete necessary repairs, and maintain the facility going forward, let alone qualify as an investor under existing statutory and regulatory provisions. For HUD to approve some kind of sale or joint venture involving The Brith Sholom House, it must be sure that the transaction will safeguard the residents of the facility.

86. Denied. HUD postponed the scheduled February 4, 2010, foreclosure sale.

## COUNT I

### Foundation v. HUD
### Violation of Due Process

87. HUD restates its responses to paragraphs 1 through 87 as if fully set forth herein.

88-99. Denied. Paragraphs 89-100 state conclusions of law to which no response is required. To the extent a response is required, the allegations contained in the paragraphs are denied.

100. Denied. By way of further response, the Foundation implies by its allegations that, should a new entity purchase The Brith Sholom House in a foreclosure sale, the rent charged to residents of the facility will automatically rise. A rental increase is by no means certain. What is more, should the Foundation itself maintain ownership in The Brith Sholom House, it may raise rents, especially if it must find a way to pay for necessary repairs to the facility and to bring its two mortgages current. Regardless of who owns The Brith Sholom House, statutory, regulatory, and contractual provisions will require that the facility provides affordable rental housing for senior citizens and will restrict whether and how much any owner can raise existing rents.

101. Denied. Paragraph 102 states conclusions of law to which no response is required. To the extent a response is required, the allegations contained in the paragraphs are denied.

## COUNT II

### McBurneet and Sabur v. HUD
### Violation of Due Process and Regulatory Obligations

102. HUD restates its responses to paragraphs 1 through 102 as if fully set forth herein.

103-110. Denied. Paragraphs 104-110 state conclusions of law to which no

response is required. To the extent a response is required, the allegations contained in the paragraphs are denied. By way of further response, a number of these paragraphs refer to regulations applicable to HUD-owned properties. HUD does not own any part of The Brith Shalom House, thus these regulations are irrelevant.

WHEREFORE, Defendant prays that Plaintiffs take nothing by way of their complaint, that the same be dismissed and that judgment be awarded in favor of Defendant together with costs and such other and further relief as the Court deems appropriate in this case.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

The complaint fails to state a claim upon relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

Cross-default provisions contained in the relevant mortgages state that a default on the mortgage on one property causes a default on the mortgage on the other property.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff The Brith Sholom Foundation comes to this action with unclean hands and is therefore not entitled to equitable relief.

**FOURTH AFFIRMATIVE DEFENSE**

To the extent that the individual plaintiffs have been harmed, it is as a result of the failure of The Brith Sholom Foundation to operate, maintain, and pay for The Brith Sholom House in an appropriate fashion.

**FIFTH AFFIRMATIVE DEFENSE**

Should the plaintiffs be entitled to any relief, which entitlement is denied, then equity

would require that the Court order The Brith Sholom Foundation to meet its statutory, regulatory, and contractual obligations to repair The Brith Sholom House and to make current its mortgage loans with HUD.

WHEREFORE, Defendant prays that Plaintiff takes nothing by way of their complaint, that the same be dismissed and that judgment be awarded in favor of Defendant together with costs and such other and further relief as the Court deems appropriate in this case.

Respectfully submitted,

MICHAEL L. LEVY
United States Attorney

MARGARET L. HUTCHINSON
Chief, Civil Division
Assistant United States Attorney

MICHAEL S. BLUME
Assistant United States Attorney

THOMAS F. JOHNSON
Assistant United States Attorney

Dated: February 9, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Answer to be served by first class mail, postage prepaid, upon the following:

Jeffrey M. Scott, Esq.
Jay S. Ruder, Esq.
Archer & Greiner, P.C.
One Liberty Place, 32d Floor
Philadelphia, PA 19103-7393

Rachel Garland, Esq.
George Gould, Esq.
Community Legal Services
1424 Chestnut Street
Philadelphia, PA 19103

Michael S. Blume

DATE: